DANNY E. DAVIS AND ANN H. DAVIS, PLAINTIFFS V. LEONARD MESSER, INDIVIDUALLY, AND IN HIS OFFICIAL CAPACITY AS CHIEF OF THE WAYNESVILLE FIRE DEPARTMENT, THE TOWN OF WAYNESVILLE, A NORTH CAROLINA MUNICIPAL CORPORATION, THE WAYNESVILLE FIRE DEPARTMENT, AND HAYWOOD COUNTY, DEFENDANTS

No. 9230SC1336

(Filed 6 June 1995)

1. **Municipal Corporations § 444 (NCI4th)— municipal fire department—refusal to fight fire—governmental immunity—purchase of insurance**

   Plaintiffs' complaint was sufficient to withstand defendant Town's motion to dismiss under N.C.G.S. § 1A-1, Rule 12(b)(6) where plaintiffs alleged that they called 911 in response to a fire at their residence; the dispatcher confirmed their location and notified the fire department; the dispatcher inquired whether plaintiffs' residence fell within the Town's fire district; the fire fighter answering the call indicated that the Waynesville Fire Department would respond; the Department immediately sent trucks bearing appropriate equipment to the scene; as the firefighters approached plaintiffs' home, they saw a road sign indicating that they were entering another fire district; the fire chief, despite being within .4 mile and in sight of plaintiffs' burning residence, ordered his crew to return to the fire station; plaintiffs' home was ultimately completely destroyed; and the Town had valid and enforceable liability insurance covering the full dollar amount of claims asserted against it.

   **Am Jur 2d, Municipal, County, School, and State Tort Liability §§ 37 et seq.**

2. **Fires and Firemen § 21 (NCI4th)— fire call outside fire district—initial response halted at district line—action against town—N.C.G.S. § 160A-293 not applicable**

   Plaintiffs' claim against defendant town was sufficiently stated so as to avoid preclusion by N.C.G.S. § 160A-293(b) under

DAVIS v. MESSER

[119 N.C. App. 44 (1995)]

defendant town's motion to dismiss under N.C.G.S. § 1A-1, Rule 12(b)(6) where plaintiffs alleged that they called 911 in response to a fire at their residence; the dispatcher confirmed their location and notified the fire department; the dispatcher inquired whether plaintiffs' residence fell within the Town's fire district; the fire fighter answering the call indicated that the Waynesville Fire Department would respond; the Department immediately sent trucks bearing appropriate equipment to the scene; as the firefighters approached plaintiffs' home, they saw a road sign indicating that they were entering another fire district; the fire chief, despite being within .4 mile and in sight of plaintiffs' burning residence, ordered his crew to return to the fire station; and plaintiffs' home was ultimately completely destroyed. The complaint cannot be said to set forth facts which under N.C.G.S. § 160A-293(b) would constitute a "failure" to answer plaintiffs' call, does not allege "delay" by the Department, and plaintiffs' allegations are not related to any negligent "act or omission" of the Department and its employees in the course of "rendering fire protection services outside the Town's corporate limits."

**Am Jur 2d, Municipal, County, School, and State Tort Liability §§ 662 et seq.**

3. **Fires and Firemen § 21 (NCI4th)— fire just outside municipal fire district—refusal to fight—liability of city—public duty doctrine**

The trial court erred by granting the defendant Town's motion to dismiss under N.C.G.S. § 1A-1, Rule 12(b)(6) where plaintiffs alleged that they called 911 in response to a fire at their residence; the dispatcher confirmed their location and notified the fire department; the dispatcher inquired whether plaintiffs' residence fell within the Town's fire district; the fire fighter answering the call indicated that the Waynesville Fire Department would respond; the department immediately sent trucks bearing appropriate equipment to the scene; as the firefighters approached plaintiffs' home, they saw a road sign indicating that they were entering another fire district; the fire chief, despite being within .4 mile and in sight of plaintiffs' burning residence, ordered his crew to return to the fire station; and plaintiffs' home was ultimately completely destroyed. Plaintiffs alleged facts sufficient to establish a *prima facie* case of negligence against the Town based upon its conduct, as well as sufficient for purposes of Rule 12(b)(6) to place plaintiffs' case within the "special duty" excep-

tion to the public duty doctrine and to withstand the Town's defenses.

**Am Jur 2d, Municipal, County, School, and State Tort Liability §§ 662 et seq.**

4. **Appeal and Error § 418 (NCI4th)— refusal of fire department to fight fire—negligence in programming 911 system—argument omitted from brief—abandoned**

An argument concerning dismissal of a claim based upon alleged negligence in programming a 911 system was abandoned where no argument was presented in the brief.

**Am Jur 2d, Appeal and Error §§ 693-696.**

5. **Fires and Firemen § 21 (NCI4th)— fire call outside fire district—initial response halted at district line—action against chief—N.C.G.S. § 160A-293 not applicable**

Plaintiffs' action against a fire chief for not fighting a fire just outside his fire district was not barred by the first clause of N.C.G.S. § 160A-293(b) because the alleged act of negligence was neither a failure nor a delay in answering an emergency call and the purview of the second clause is limited to the municipality and not to officers and employees thereof.

**Am Jur 2d, Municipal, County, School, and State Tort Liability §§ 662 et seq.**

6. **Public Officers and Employees § 35 (NCI4th)— fire chief— refusal to fight fire outside district—public official immunity—not applicable**

A fire chief was not immune from liability for negligence in the performance of his duties where plaintiffs alleged that they called 911 in response to a fire at their residence; the dispatcher confirmed their location and notified the fire department; the dispatcher inquired whether plaintiffs' residence fell within the Town's fire district; the fire fighter answering the call indicated that the Waynesville Fire Department would respond; the Department immediately sent trucks bearing appropriate equipment to the scene; as the firefighters approached plaintiffs' home, they saw a road sign indicating that they were entering another fire district; the fire chief, despite being within .4 mile and in sight of plaintiffs' burning residence, ordered his crew to return to the fire station; and plaintiffs' home was ultimately completely

destroyed. The record reveals no assertion by defendant chief of the affirmative defense of public official immunity and plaintiffs' complaint would have withstood the chief's dismissal motion even had defendant properly asserted the defense because the conduct described in the complaint extends beyond the realm of mere negligence.

**Am Jur 2d, Public Officers and Employees §§ 358 et seq., 375.**

7. **Fires and Firemen § 21 (NCI4th)— fire just outside municipal fire district—refusal to fight—liability of fire chief—public duty doctrine**

The trial court erred in granting a fire chief's motion to dismiss under N.C.G.S. § 1A-1, Rule 12(b)(6) where plaintiffs alleged that they called 911 in response to a fire at their residence; the dispatcher confirmed their location and notified the fire department; the dispatcher inquired whether plaintiffs' residence fell within the Town's fire district; the fire fighter answering the call indicated that the Waynesville Fire Department would respond; the Department immediately sent trucks bearing appropriate equipment to the scene; as the firefighters approached plaintiffs' home, they saw a road sign indicating that they were entering another fire district; the fire chief, despite being within .4 mile and in sight of plaintiffs' burning residence, ordered his crew to return to the fire station; and plaintiffs' home was ultimately completely destroyed. Although the chief relied upon the public duty doctrine, plaintiffs have alleged facts adequate to establish a *prima facie* case of negligence as well as the substantive elements of the special duty exception sufficient to avoid the chief's defense.

**Am Jur 2d, Municipal, County, School, and State Tort Liability §§ 662 et seq.**

8. **Fires and Firemen § 21 (NCI4th)— fire department—capacity to be sued**

A fire department was a component part of a town and, as such, lacked the capacity to be sued. Only persons in being may be sued, and there is no statute providing for recovery against a municipal fire department.

**Am Jur 2d, Municipal, County, School, and State Tort Liability §§ 662 et seq.**

**9. Counties § 126 (NCI4th)— negligence in programming 911 system—immunity—purchase of insurance**

Summary judgment was properly granted for defendant county on a claim for negligently programming a 911 system in an action arising from a municipal fire department's refusal to fight a fire just outside its fire district where the record reveals but a single policy of insurance issued to the county which did not provide coverage for plaintiffs' injuries. The county did not waive immunity from this suit.

**Am Jur 2d, Municipal, County, School, and State Tort Liability §§ 37 et seq.**

**Liability or indemnity insurance carried by governmental unit as affecting immunity from tort liability. 68 ALR2d 1437.**

Appeal by plaintiffs from order entered 19 October 1992 by Judge Forrest A. Ferrell in Haywood County Superior Court. Heard in the Court of Appeals 16 November 1993.

*Dean & Gibson, by Michael G. Gibson and Brien D. Stockman, for plaintiff-appellant.*

*Van Winkle, Buck, Wall, Starnes and Davis, P.A., by W. Bradford Searson, for defendant-appellees Leonard Messer and the Waynesville Fire Department.*

*Blue, Fellerath, Cloninger & Barbour, P.A., by Frederick S. Barbour, for defendant-appellee Town of Waynesville.*

*Killian, Kersten, Patton & Ellis, P.A., by Stephen G. Ellis, for defendant-appellee Haywood County.*

JOHN, Judge.

In this negligence action based upon destruction of plaintiffs' residence by fire, plaintiffs contend the trial court erred by (1) dismissing their action pursuant to N.C.R. Civ. P. 12(b)(6) (1990) as to defendants Fire Chief Leonard Messer (Messer), the Waynesville Fire Department (the Department) and the Town of Waynesville (the Town); and (2) granting the summary judgment motion of defendant Haywood County (the County). We hold the court erred regarding plaintiffs' claims against the Town and Messer.

DAVIS v. MESSER

[119 N.C. App. 44 (1995)]

In a complaint filed 22 January 1992, plaintiffs claimed their residence had been destroyed as the result of defendants' negligence in the establishment and operation of emergency fire control services. In particular, plaintiffs alleged that prior to 28 January 1989 the County authorized establishment of an "enhanced" 911 emergency response system. Thereafter, by use of "map overlays" and relying in part on information provided by employees of defendant Town, agents of the County assigned each dwelling within the county to a specific fire district. Plaintiffs' residence on 841 Plott Creek Road was listed as being located within the Town's fire district. However, it is undisputed that plaintiffs' address was in actuality within the Saunook fire district. According to plaintiffs, the 911 system was thus negligently programmed by agents of the Town and the County.

Plaintiffs further alleged that a fire at their residence on 28 January 1989 prompted plaintiff Ann Davis to place a telephone call to the new 911 system for assistance. The dispatcher reached by Ms. Davis confirmed the location of the fire as being 841 Plott Creek Road and notified the Department. The 911 dispatcher inquired of the Department whether plaintiffs' residence fell within the Town's fire district; the fire fighter answering the call "indicated that the Waynesville Fire Department would respond to the fire."

According to plaintiffs, the Department immediately sent trucks bearing appropriate equipment to the scene. As they approached plaintiffs' home, however, fire fighters saw a road sign on Plott Creek Road indicating they were entering the Saunook fire district. At that point, despite being within .4 mile and "in sight of . . . [p]laintiffs' burning residence," defendant Messer ordered his crew to return the fire truck to the Department's fire station. Plaintiffs further alleged the Department was authorized to respond to a call outside the Town's district by virtue of a "mutual aid agreement."

In addition, plaintiffs claimed that initial assumption of responsibility for their 911 call by the Department "effectively precluded" any other agency from responding in time to extinguish the fire. More particularly, because they "relied upon the acceptance of the fire call by the Town of Waynesville Fire Department," plaintiffs did not attempt to obtain other assistance. Acceptance of the distress call by the Department coupled with plaintiff's reliance thereon created, according to plaintiffs' complaint, a "special duty" of the Department to plaintiffs. This included continuation of the initial response so as to assure that greater harm did not come to plaintiffs and their property.

**DAVIS v. MESSER**

[119 N.C. App. 44 (1995)]

Plaintiffs maintained that, as a direct and proximate result of the Department's action, the fire burned unimpeded for an additional 15 to 20 minutes and that ultimately their home was completely destroyed.

Plaintiffs further characterized the conduct of defendant Messer as "reckless, willful, [and] wanton," amounting to "a callous, malicious, willful and wrongful disregard for the property rights and safety of the Plaintiffs."

Plaintiffs sought recovery against all defendants on negligence theories and against Messer (individually and in his official capacity as Fire Chief) on the additional grounds that his conduct was "reckless, willful, wanton, malicious, and without just cause." Regarding the Town, the Department and the County, plaintiffs specifically alleged each entity had "waived governmental or sovereign immunity by the procurement of liability insurance which provides coverage to each of them for the full dollar amount of the claims asserted . . . ."

In their joint answer to the complaint, Messer and the Department moved to dismiss claims against them pursuant to Rule 12(b)(6) on grounds of immunity from liability as provided by N.C. Gen. Stat. § 160A-293 (1994). In its answer, the Town similarly moved to dismiss plaintiffs' action, and also asserted the affirmative defense of municipal immunity. The County likewise raised the affirmative defense of governmental immunity in its answer and specifically denied having waived immunity through the purchase of liability insurance. The County thereafter moved for summary judgment.

Hearing on defendants' various motions was held 19 October 1992. By order entered that same date, the trial court allowed the Rule 12(b)(6) motions of defendants Messer, the Department and the Town, and granted summary judgment in favor of the County. In pertinent part, the court's order provided as follows:

1. The 12(b)(6) motions are allowed primarily on the basis of N.C.G.S. 160A-293;

2. For purposes of this motion, the Court takes as true Plaintiffs' allegations that Defendants have applicable liability insurance.

Regarding the County's Motion for Summary Judgment, the Court considered the record, including the applicable insurance policies and applicable statute, N.C.G.S. 153A-435.

**DAVIS v. MESSER**

[119 N.C. App. 44 (1995)]

Plaintiffs appeal each of the court's rulings.

---

I.

Plaintiffs' first assignment of error is directed at the trial court's dismissal pursuant to Rule 12(b)(6) of their claims against defendants Messer, the Department and the Town.

A Rule 12(b)(6) motion to dismiss presents the question of "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted . . . ." *Harris v. NCNB*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987) (citation omitted). In order to survive dismissal under the Rule, a party must "state enough to satisfy the substantive elements of at least some legally recognized claim . . . ." *Orange County v. Dept. of Transportation*, 46 N.C. App. 350, 378-79, 265 S.E.2d 890, 909 (citation omitted), *disc. review denied*, 301 N.C. 94 (1980). In ruling upon such motion, the complaint is to be liberally construed, *Jenkins v. Wheeler*, 69 N.C. App. 140, 142, 316 S.E.2d 354, 356, *disc. review denied*, 311 N.C. 758, 321 S.E.2d 136 (1984), and should not be dismissed unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim. *Id.* (citations omitted).

In the case *sub judice*, plaintiffs sought to recover based upon the alleged negligence of the various defendants. In order to plead a *prima facie* case of actionable negligence, a plaintiff's complaint must set out allegations indicating that: (1) defendant owed plaintiff a duty of reasonable care; (2) defendant breached that duty; (3) said breach was an actual and proximate cause of plaintiff's injury; and (4) plaintiff suffered damages as a result thereof. *Winters v. Lee*, 115 N.C. App. 692, 694, 446 S.E.2d 123 124 (citations omitted), *disc. review denied*, 338 N.C. 671, 453 S.E.2d 186 (1994). However, because different rules govern the potential liability of the several defendants herein, we examine separately the court's action as to each.

A. Town of Waynesville.

[1] The allegations of plaintiffs' complaint construed liberally, *see, e.g., Dixon v. Stuart*, 85 N.C. App. 338, 340, 354 S.E.2d 757, 758 (1987) (citation omitted), contained two distinct claims of negligence against the Town. First, plaintiffs alleged the Department, a "department of the Town of Waynesville, was negligent by initially responding to the emergency call and thereafter not fighting the fire at

plaintiffs' residence. Second, plaintiffs asserted employees of the Town negligently provided incorrect information to the County which resulted in improper programming of the enhanced 911 system. The Town in response insisted it was immune from liability regarding both allegations of negligence.

### 1. Refusal to Fight the Fire.

### (a.) Governmental Immunity.

The common law doctrine of governmental immunity protects a city or county from liability for injuries arising from governmental (as opposed to proprietary) activities. *See, e.g., Wiggins v. City of Monroe*, 73 N.C. App. 44, 49, 326 S.E.2d 39, 43 (1985) (citations omitted); *see also Davis v. Town of Southern Pines*, 116 N.C. App. 663, 673-74, 449 S.E.2d 240, 246 (1994), *disc. review denied*, 339 N.C. 737, 454 S.E.2d 648 (1995). Governmental activities have been described as those which promote the "health, safety, security or general welfare of its citizens." *Clark v. Scheld*, 253 N.C. 732, 735, 117 S.E.2d 838, 841 (1961) (citation omitted). The establishment of a 911 emergency system and provision of fire protection indisputably fall within this definition; thus, a municipality would not ordinarily be liable for the negligence of officers and employees undertaking or performing these activities. *See Taylor v. Ashburn*, 112 N.C. App. 604, 607, 436 S.E.2d 276, 278 (1993) (fire protection services) (citations omitted), *disc. review denied*, 336 N.C. 77, 445 S.E.2d 46 (1994); *see also Valevais v. City of New Bern*, 10 N.C. App. 215, 218, 178 S.E.2d 109, 112 (1970) (fire protection services) (citation omitted).

However, a municipality may waive governmental immunity by the purchase of liability insurance, *see, e.g., Gregory v. City of Kings Mountain*, 117 N.C. App. 99, 103, 450 S.E.2d 349, 353 (1994) (citations omitted); but "[i]mmunity is waived only to the extent that the city or town is indemnified by the insurance contract from liability for the acts alleged." *Combs v. Town of Belhaven*, 106 N.C. App. 71, 73, 415 S.E.2d 91, 92 (1992) (citations omitted); *see also* N.C. Gen. Stat. § 160A-485 (1994).

In the case *sub judice*, plaintiffs' complaint alleged that on 28 January 1989 the Town had valid and enforceable liability insurance covering the full dollar amount of claims asserted against it. Taking this factual allegation as true, as we are required to do in reviewing a Rule 12(b)(6) dismissal, *see Lynn v. Overlook Development*, 98 N.C. App. 75, 79, 389 S.E.2d 609, 612 (1990), *aff'd in part, rev'd in part on*

*other grounds*, 328 N.C. 689, 403 S.E.2d 469 (1991), we hold its presence in the complaint is sufficient for purposes of the Town's motion to withstand the defense of governmental immunity.

(b.) Immunity under G.S. § 160A-293.

**[2]** The Town further argues plaintiffs' claims are in any event precluded under G.S. § 160A-293. Indeed, in its order dismissing plaintiffs' action, the trial court indicated its ruling was made "primarily on the basis of N.C.G.S. 160A-293." However, plaintiffs maintain the statute is inapplicable given the specific factual scenario alleged in the complaint. We agree with plaintiffs.

The statute provides in pertinent part as follows:

[1] No city or any officer or employee thereof shall be held to answer in any civil action or proceeding for *failure or delay in answering calls* for fire protection outside the corporate limits, [2] nor shall any city be held to answer in any civil action or proceeding for the acts or omissions of its officers or employees in rendering fire protection services outside its corporate limits.

G.S. § 160A-293(b) (emphasis added).

According to plaintiffs' allegations, the Department promptly answered their emergency 911 call, proceeded without "further inquiry," dispatched "appropriate fire equipment" to the indicated address, and continued *en route* to a location within sight of the fire until the response was terminated upon order of Messer. "Failure" is defined as "omission of performance of an action or task." Webster's Third New International Dictionary 815 (1968). Liberally construed, *Dixon*, 85 N.C. App. at 340, 354 S.E.2d at 758 (citation omitted), plaintiffs' complaint states the Department answered Ms. Davis' call and immediately directed fire trucks to the scene of the fire at her home. Thus, the complaint cannot be said to set forth facts which under the statute would constitute a "failure" to *answer* plaintiffs' call.

Further, although assuring the 911 dispatcher it would respond, the municipality's fire department did not thereafter arrive at the scene of the fire. Indeed, according to plaintiffs' allegations, the Department made *no* attempt to reach 841 Plott Creek Road with firefighting aid once it ascertained that address fell within another fire district. Webster indicates that to "delay" is to "prolong the time of" or to "detain[] or hinder for a time," and points out that "delay implies a holding back, as by interference, esp. from completion or arrival."

**DAVIS v. MESSER**

[119 N.C. App. 44 (1995)]

*See* Webster's at 595. Plaintiffs' complaint presents facts describing a conscious decision by the Department through Messer to turn its fire truck away from the fire as opposed to any prolongation of the time involved in answering plaintiffs' call. As such, the complaint does not allege "delay" by the Department.

Therefore, because the Department's alleged acts of negligence cannot fairly be characterized as either a "failure" or a "delay" under the statute in answering plaintiffs' 911 call, the *first clause* of the section is inapplicable to the circumstances set forth in plaintiffs' complaint.

Defendants also maintain that "an objective reading of [plaintiffs'] complaint . . . shows that [they] seek to recover for alleged negligent acts or omissions of a municipal . . . fire department in rendering fire protection outside the [municipality's] corporate limits," and that plaintiffs' claim is therefore barred by the *second clause* of G.S. § 160A-293(b). We disagree.

The essence of plaintiffs' claim against the Town is that an agent of the Department made a decision *within* the municipality's corporate limits *not to render* fire protection to plaintiffs whose residence was located in the *Saunook* fire district. Plaintiffs' allegations against the Town thus are not related to any negligent "act or omission" of the Department and its employees *in the course of* "rendering fire protection services *outside* [the Town's] corporate limits." (Emphasis added).

Plaintiffs' claim against the Town (based upon the acts of Messer and the Department) as contained in the complaint is therefore sufficiently stated under Rule 12(b)(6) so as to avoid preclusion by G.S. § 160A-293(b).

### (c.) The "Public Duty" Doctrine.

**[3]** We therefore proceed to a determination of whether the allegations of the complaint, construed liberally, are sufficient under Rule 12(b)(6) to set forth a claim for relief based upon the Town's negligence. *See, e.g., Lyon v. Continental Trading Co.*, 76 N.C. App. 499, 502, 333 S.E.2d 774, 775-76 (1985).

As aforementioned, in order to set out a *prima facie* case of actionable negligence, plaintiffs must allege facts indicating that: (1) defendant Town owed plaintiffs a duty of reasonable care; (2) defendant breached that duty; (3) said breach was an actual and proximate

cause of plaintiffs' injury; and (4) plaintiffs suffered damages as a result thereof. *Winters*, 115 N.C. App. at 694, 446 S.E.2d at 124 (citations omitted).

In the case *sub judice*, the Town maintains that because there is "an absence of law" in support of the "duty" element of plaintiffs' negligence claim, the action was properly dismissed pursuant to Rule 12(b)(6). *See, e.g., Home Electric Co. v. Hall and Underdown Heating & Air Cond. Co.*, 86 N.C. App. 540, 542, 358 S.E.2d 539, 540 (1987), *aff'd per curiam*, 322 N.C. 107, 366 S.E.2d 441 (1988). Plaintiffs respond that the Town and its fire department owed them a "special duty" to provide assistance in fighting the fire at their residence.

The Town relies upon the "public duty doctrine" according to which a municipality "ordinarily acts for the benefit of the public at large and not for a specific individual." *See, e.g., Coleman v. Cooper*, 89 N.C. App. 188, 193, 366 S.E.2d 2, 6 (citations omitted), *disc. review denied*, 322 N.C. 834, 371 S.E.2d 275 (1988). More specifically, under this doctrine, "a municipality and its agents act for the benefit of the public, and therefore, there is no liability for the failure to furnish . . . protection to specific individuals." *Braswell v. Braswell*, 330 N.C. 363, 370, 410 S.E.2d 897, 901 (1991) (citation omitted), *reh'g denied*, 330 N.C. 854, 413 S.E.2d 550 (1992). Thus, if applicable, the public duty doctrine would indeed operate to negate the first element of plaintiffs' *prima facie* negligence case—i.e., that the Town owed a duty to plaintiffs to use reasonable care. *See Clark v. Red Bird Cab Co.*, 114 N.C. App. 400, 403-04, 442 S.E.2d 75, 77-78, *disc. review denied*, 336 N.C. 603, 447 S.E.2d 387 (1994).

As defendant Town correctly observes, the "defense" of public duty doctrine has been raised almost exclusively in cases involving allegations of negligence in the provision of police protection. *See, e.g., Braswell*, 330 N.C. at 370-71, 410 S.E.2d at 901-02; *Clark*, 114 N.C. App. at 404-05, 442 S.E.2d at 77-78; *Hull v. Oldham*, 104 N.C. App. 29, 36, 407 S.E.2d 611, 614-15, *disc. review denied*, 330 N.C. 441, 412 S.E.2d 72 (1991); *Coleman*, 89 N.C. App. at 192-93, 366 S.E.2d at 5-6. However, in a recent decision by this Court, the doctrine was applied where a plaintiff alleged the county animal shelter and its employees were negligent in the provision of animal control services. *See Prevette v. Forsyth County*, 110 N.C. App. 754, 757-58, 431 S.E.2d 216, 218, *disc. review denied*, 334 N.C. 622, 435 S.E.2d 338 (1993). Fire protection services provided by a municipality through its fire depart-

ment are sufficiently similar to the protective services offered by a police department and an animal shelter to justify invocation of the public duty doctrine herein. Nonetheless, we hold the doctrine does not bar the Town's liability under the circumstances alleged in plaintiffs' complaint.

Although a city's duty is generally understood to be to the public at large, two exceptions to the public duty prohibition against municipal liability have emerged in our common law. First, liability may arise when a "special relationship" has formed between the injured party and the protective agency or department. An example would be between "a state's witness or informant who has aided law enforcement officers" and the police department. *Braswell*, 330 N.C. at 371, 410 S.E.2d at 902. Second, liability exists when a municipality through its protective officers has created a "special duty" to a particular individual by "promising protection to an individual, the protection is not forthcoming, and the individual's reliance on the promise of protection is causally related to the injury suffered." *Id.* (quoting *Coleman*, 89 N.C. App. at 194, 366 S.E.2d at 6).

In the case *sub judice*, plaintiffs alleged that although the fire was outside the Town's fire district, the Department was authorized to respond by virtue of a mutual aid agreement. *See* N.C. Gen Stat. § 58-83-1 (1994). Moreover, when the 911 operator reported the fire in progress to the Department and specifically inquired whether 841 Plott Creek Road was within its district, a fire fighter indicated the Department would render assistance. According to plaintiffs' allegations, they thereafter relied upon the Department's promise of protection and hence did not attempt to contact any other fire department. However, although Messer and his crew promptly proceeded towards the fire, they never reached their destination because Messer ordered the fire truck returned to the station when only .4 mile from plaintiffs' address. Plaintiffs claimed the fire consequently burned unimpeded for an additional 15 to 20 minutes and ultimately consumed their home. More specifically, plaintiffs' allegations reflect that by accepting the 911 call and proceeding towards the scene of the fire, the Town (through the acts of its employee Messer and its Department) promised it would provide fire-fighting assistance and protection; the promised protection never arrived; and plaintiffs relied upon the promise to respond to the fire as their exclusive source of aid, resulting in the complete destruction of.their home. Again taking plaintiffs' allegations as admitted, *see Warren v. Halifax County*, 90 N.C. App. 271, 272, 368 S.E.2d 47, 49 (1988), we hold they

"state enough to satisfy the substantive elements," *Orange County*, 46 N.C. App. at 378-79, 265 S.E.2d at 909 (citation omitted) of the "special duty" exception to the public duty doctrine.

In sum, because plaintiffs alleged facts sufficient to establish a *prima facie* case of negligence against the Town based upon its conduct on 28 January 1989, as well as sufficient for purposes of Rule 12(b)(6) to place plaintiffs' case within the "special duty" exception to the public duty doctrine and to withstand the Town's defenses, the trial court erred by granting the Town's motion to dismiss. *See, e.g., Clouse v. Motors, Inc.*, 14 N.C. App. 117, 119, 187 S.E.2d 398, 400 (1972).

### 2. Negligence in 911 Programming.

**[4]** In their brief, plaintiffs present no argument concerning dismissal of their claim based upon the Town's alleged negligence in contributing to the erroneous programming of the County's enhanced 911 system by providing incorrect information. Consequently, this claim is abandoned. *See* N.C.R. App. P. 28(a); *see also, e.g., Best v. Best*, 81 N.C. App. 337, 341, 344 S.E.2d 363, 366 (1986) (questions not argued in appellant's brief are deemed abandoned) (citations omitted), *disapproved on other grounds, Petersen v. Rogers*, 337 N.C. 397, 445 S.E.2d 901 (1994).

### B. Fire Chief Messer.

Plaintiffs instituted the instant action against Messer in both his individual and official capacities, alleging his conduct in initially responding to the 911 call and subsequently refusing to provide assistance to plaintiffs was negligent and "reckless, willful, wanton, malicious, and without just cause." In reply, Messer argues plaintiffs' claim is barred by: (1) G.S. § 160A-293; (2) public official immunity; and (3) the public duty doctrine. Because our consideration of plaintiffs' complaint above reveals they have otherwise stated a valid negligence claim against Messer, we turn to a discussion of his assertions that liability is precluded.

### 1. G.S. § 160A-293.

**[5]** Determination of Messer's liability under G.S. § 160A-293 involves interpretation and application of the same statutory subsection at issue in our discussion of defendant Town's municipal immunity. *See supra* section I. A. 1.(b.).

DAVIS v. MESSER

[119 N.C. App. 44 (1995)]

Messer contends plaintiffs' action is barred by the "clear and unambiguous" language of G.S. § 160A-293(b). However, as our earlier analysis determined Messer's alleged act of negligence was neither a "failure" nor a "delay" in answering an emergency call, the first clause of G.S. § 160A-293(b) is inapplicable. Moreover, while the second clause of the statute establishes immunity for a municipality in certain circumstances, its purview is limited only to the municipality and not to officers and employees thereof. Messer's reliance upon the statutory section is thus unfounded.

### 2. Public Official Immunity.

**[6]** Messer next contends that because "[a]t all times referred to in the complaint, [he] was Chief of the Waynesville Fire Department," he was therefore "a public official immune from liability for negligence in the performance of his duties in such capacity." Conceding *arguendo* that a fire chief is a "public official," and further agreeing that Messer accurately states the rule regarding "public official immunity," *see Mullins v. Friend*, 116 N.C. App. 676, 681, 449 S.E.2d 227, 230 (1994) ("[A] public official [as opposed to a "public employee"] is immune from personal liability for mere negligence in the performance of his duties . . . ."), we nonetheless deem this doctrine unavailing to Messer in the case *sub judice*.

First, it is well-established that public official immunity is an affirmative defense. *See, e.g., Taylor*, 112 N.C. App. at 605-06, 436 S.E.2d at 278; *see also Burwell v. Giant Genie Corp.*, 115 N.C. App. 680, 684, 446 S.E.2d 126, 128-29 (1994). Moreover, the failure to plead an affirmative defense ordinarily results in waiver thereof. *See, e.g., Burwell*, 115 N.C. App. at 684, 446 S.E.2d at 129 (citation omitted).

Our review of the record reveals no assertion by Messer of the affirmative defense of public official immunity, but rather those of the alleged contributory negligence of plaintiffs and the provisions of G.S. § 160A-293. Further, the trial court's decision to dismiss plaintiffs' action for failure to state a claim was expressly based "primarily" upon the statutory defense of G.S. § 160A-293. In short, nothing of record indicates public official immunity was either raised in the pleadings or argued at the trial level; consequently, Messer may not raise this defense for the first time on appeal. *Northwestern Financial Group v. County of Gaston*, 110 N.C. App. 531, 534, 430 S.E.2d 689, 691, *disc. review denied*, 334 N.C. 621, 435 S.E.2d 337 (1993).

DAVIS v. MESSER

[119 N.C. App. 44 (1995)]

Second, in plaintiffs' complaint, Messer's conduct is not couched simply in terms of "mere negligence." *See, e.g., Messick v. Catawba County*, 110 N.C. App. 707, 717, 431 S.E.2d 489, 495, *disc. review denied*, 334 N.C. 621, 435 S.E.2d 336 (1993). To the contrary, plaintiffs repeatedly refer to Messer's directive to turn the fire trucks around within sight of plaintiffs' burning home as being "malicious," "willful and wanton," "wrongful," "reckless," and "without just cause."

Our courts have held that public officials sued in their individual capacities are "shielded from liability" unless their actions are "corrupt or malicious," or they "acted outside of and beyond the scope of" their duties. *See, e.g., Wiggins*, 73 N.C. App. at 49, 326 S.E.2d at 43 (quoting *Smith v. Hefner*, 235 N.C. 1, 7, 68 S.E.2d 783, 787 (1952)); *see also Mullins*, 116 N.C. App. at 681, 449 S.E.2d at 230 (citations omitted); *see also Slade v. Vernon*, 110 N.C. App. 422, 428, 429 S.E.2d 744, 747 (1993) (citation omitted); *see also Reid v. Roberts*, 112 N.C. App. 222, 224, 435 S.E.2d 116, 119 (Court included terms "in bad faith" and "willful and deliberate.") (citations omitted), *disc. review denied*, 335 N.C. 559, 439 S.E.2d 151 (1993).

Construing the allegations of plaintiffs' complaint liberally, *Dixon*, 85 N.C. App. at 340, 354 S.E.2d at 758 (citation omitted), we believe Messer's conduct described therein extends beyond the realm of "mere negligence." As such, even had Messer properly asserted the affirmative defense of "public official immunity," plaintiffs' complaint would withstand his dismissal motion.

In the foregoing context, Messer argues the adjectives chosen by plaintiffs to describe his actions constitute "conclusions of law" or "unwarranted deductions of fact," and are not to be taken as admitted for purposes of a Rule 12(b)(6) motion to dismiss. *See Sutton v. Duke*, 277 N.C. 94, 98, 176 S.E.2d 161, 163 (1970). He further maintains those conclusions are not supported by any facts pleaded in the complaint. Suffice it to observe that for purposes of Rule 12(b)(6), we consider the complaint's factual allegations [e.g., that at a point .4 mile from plaintiffs' burning house, Messer (who indisputably had authority to provide emergency assistance) decided to abandon plaintiffs' emergency call and instead ordered his crew to return to the fire station] adequate to support a conclusion that Messer's behavior was "malicious," "willful and wanton," or "outside of and beyond the scope of" his official duties as Fire Chief.

### 3. Public Duty Doctrine.

**[7]** Messer also relies upon the "public duty doctrine." As aforementioned, under this doctrine, "a municipality and its agents act for the benefit of the public, and therefore, there is no liability for the failure to furnish . . . protection to specific individuals." *Braswell*, 330 N.C. at 370, 410 S.E.2d at 901.

Although the "defense" of public duty doctrine has traditionally been raised almost exclusively in cases involving allegations of negligence in the provision of police protection, *see, e.g., id.* at 370-71, 410 S.E.2d at 901-02, we acknowledged above that the doctrine is properly invoked herein concerning the obligations of a municipal fire department. *See supra* section I. A. 1.(c.). However, as with defendant Town, the doctrine does not operate to bar Messer's liability in the circumstances of the allegations *sub judice*.

Similar to our discussion in relation to the Town, we hold the allegations of plaintiffs' complaint liberally construed, *see Jenkins*, 69 N.C. App. at 142, 316 S.E.2d at 356, and taken as admitted, *see Warren*, 90 N.C. App. at 272, 368 S.E.2d at 49, are sufficient for purposes of Rule 12(b)(6) to establish the "special duty" exception to the public duty doctrine asserted by Messer. Specifically, plaintiffs' claim that by proceeding with his crew towards the scene of the fire immediately following acceptance of the 911 call, Messer (as Fire Chief and "responsible for the control and direction of the activities" of the Department) promised he and the Department would provide firefighting assistance and protection; that the promised protection never arrived at plaintiffs' residence as a consequence of Messer's order promulgated within sight of the burning dwelling; and that plaintiffs relied upon the promise to respond as their exclusive source of aid, resulting in the complete destruction of their home. In sum, because plaintiffs have alleged facts adequate to establish a *prima facie* case of negligence as well as the "substantive elements," *Orange County*, 46 N.C. App. at 378-79, 265 S.E.2d at 909, of the "special duty" exception sufficient to avoid Messer's asserted statutory defense, the trial court erred in granting Messer's Rule 12(b)(6) motion. *See, e.g., Clouse*, 14 N.C. App. at 119, 187 S.E.2d at 400.

### C. The Waynesville Fire Department.

**[8]** "Unless a statute provides to the contrary, only persons in being may be sued." *Coleman*, 89 N.C. App. at 192, 366 S.E.2d at 5 (citation omitted). Plaintiffs cite no statute providing for recovery against a

**DAVIS v. MESSER**

[119 N.C. App. 44 (1995)]

municipal fire department and our research has discovered none. We hold the Department is a component part of defendant Town and, as such, lacks the capacity to be sued. *See id.* (no liability for a police department) (citations omitted). Accordingly, the Department's Rule 12(b)(6) motion was properly allowed.

## II.

**[9]** In their second assignment of error, plaintiffs maintain the trial court erred by granting summary judgment in favor of defendant County. We disagree.

Plaintiffs' claim against the County is based upon allegations that certain county agents negligently programmed the enhanced 911 system by incorrectly identifying plaintiffs' residence as being located in the Town's fire district.

Summary judgment is properly granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." *See* N.C.R. Civ. P. 56 (1990). The party moving for summary judgment (here, the County) bears the burden of establishing the lack of any triable factual issue. *Roumillat v. Simplistic Enterprises, Inc.*, 331 N.C. 57, 62-63, 414 S.E.2d 339, 341-42 (1992) (citations omitted). It may meet this burden either by: (1) demonstrating that an essential element of plaintiffs' claim is nonexistent; (2) establishing through discovery that plaintiffs cannot produce evidence to support an essential element of their claim; or (3) showing that plaintiffs cannot survive an affirmative defense, such as governmental (or sovereign) immunity. *Id.* at 63, 414 S.E.2d at 342.

The County relied in the trial court upon the third of the above-mentioned approaches. In particular, it contended that governmental immunity barred plaintiffs' negligence action, and further that it had not waived immunity by purchasing liability insurance covering "acts and losses as claimed by the Plaintiffs."

It is well-established that governmental immunity typically operates as a bar to negligence claims brought against a county, *see, e.g.*, *Messick*, 110 N.C. App. at 714, 431 S.E.2d at 493-94 (citations omitted), but that such immunity may be waived by the purchase of liability insurance. *See* N.C. Gen. Stat. § 153A-435 (1991). Nonetheless, "[i]mmunity is waived only to the extent that the [county] is indemni-

fied by the insurance contract for the acts alleged." *Combs*, 106 N.C. App. at 73, 415 S.E.2d at 92 (citation omitted).

The record *sub judice* reveals but a single policy of insurance issued to the County arguably in effect either at the time the 911 system was programmed or on the date of the fire. We have reviewed that policy (issued by Clarendon National Insurance Company) and agree with the trial court that it did not provide coverage for plaintiffs' injuries. Accordingly, the County did not waive governmental immunity from this tort suit by procuring insurance, and the court properly allowed summary judgment in its favor.

CONCLUSION

Upon our review of the record and applicable authorities, we hold the trial court erred in dismissing plaintiffs' action pursuant to Rule 12(b)(6) as to defendants Messer and the Town. The court's ruling with respect to said defendants is therefore reversed. The order of dismissal as to defendant Department and the entry of summary judgment in favor of defendant County are affirmed.

Affirmed in part; reversed and remanded in part.

Judges GREENE and MARTIN, John M. concur.